IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID CAUDLE,

       Plaintiff,

                           Case No. 2:17-cv-13737

v.

                           Hon. Mark A. Goldsmith

THE NIELSEN COMPANY (US), LLC,

       Defendant.

_____

| | |
|---|---|
| CARLA D. AIKENS, P.C. | MILLER, CANFIELD, PADDOCK |
| CARLA D. AIKENS  (P-69530) | AND STONE, P.L.C. |
| CONNOR GALLAGHER (P-82104) | MEGAN P. NORRIS  (P-39318) |
| Attorney for Plaintiff | JESSICA B.K. PASK (P-82212) |
| 615 Griswold, Suite 709 | Attorneys for Defendant |
| Detroit, Michigan  48226 | 150 West Jefferson, Suite 2500 |
| carla@aikenslawfirm.com | Detroit, Michigan  48226 |
| connor@aikenslawfirm.com | (313) 963-6420 |
| | norris@millercanfield.com |
| | pask@millercanfield.com |

_____

## **DEFENDANT'S AMENDED MOTION FOR SUMMARY JUDGMENT**

### **ORAL ARGUMENT REQUESTED**

"LOCAL RULE CERTIFICATION:  I, Megan P. Norris, certify that this document complies with Local Rule 5.1(a), including:  double-spaced (except for quoted materials and footnotes); at least one-inch margins on the top, sides, and bottom; consecutive page numbering; and type size of all text and footnotes that is no smaller than 10-1/2 characters per inch (for non-proportional fonts) or 14 point (for proportional fonts).  I also certify that it is the appropriate length.  Local Rule 7.1(d)(3)."

Defendant, THE NIELSEN COMPANY (US), LLC, through its attorneys, MILLER, CANFIELD, PADDOCK AND STONE, PLC, hereby moves for summary judgment pursuant to Fed. R. Civ. P. 56 and Fed. R. Civ. Pro 12(b)(6) for the following reasons:

1.     The undersigned counsel certifies that on June 21, 2019, counsel provided Plaintiff's counsel with a draft of this Motion and Brief explaining the nature of the relief to be sought and the basis for the motion, and requested concurrence in the relief.  Plaintiff's counsel denied concurrence on June 24, 2019.

2.     Plaintiff, David Caudle, is a former employee of the Nielsen Company (US), LLC ("Defendant," "Nielsen" or "the Company") who held the position of Field Representative for four and half years.

3.     As a Field Representative, Plaintiff was responsible for servicing Nielsen homes, *i.e.,* homes which have Nielsen equipment installed on their viewing devices in order to provide the Nielsen ratings which are sold both to those who are responsible for determining what shows are produced and aired and companies who pay to advertise on such shows.

4.     Throughout his employment, Plaintiff was repeatedly counseled, including in his annual performance evaluations and a Performance Improvement Plan ("PIP"), regarding his failure to maintain accurate data regarding the individuals and viewing devices in the homes at all times.

2

5.      For much of his life, including throughout his employment with Nielsen, Plaintiff has had sickle cell anemia.

6.      Plaintiff acknowledges that he has been granted whatever time off he has requested as a result of his medical condition, including multiple leaves of absence.

7.      Plaintiff further acknowledges that after one of his leaves he was allowed to return to work on light duty, *i.e.,* to duties other than the essential functions of his job, even though the Company generally does not allow employees who cannot perform their regular job duties to return to work.

8.      While Plaintiff was on a leave in 2016, others who were performing Plaintiff's duties during his absence discovered a number of serious and unacceptable errors regarding, among other things, the data relating to homes for which Plaintiff was responsible.

9.      Plaintiff acknowledges that when errors regarding the individuals watching the viewing devices are found, Nielsen must conduct a full investigation, alert its customers to the errors in data, and in some cases make significant financial reparations as a result of the mistakes.

10.      When Plaintiff returned from his leave on October 5, 2016, he was suspended pending review of the situation, then terminated a week later.

11.     Caudle's nine-count April 13, 2018 Complaint[1] alleges retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") (Count I); retaliation in violation of the Elliott-Larsen Civil Rights Act ("ELCRA") (Count II); retaliation in violation of the Family and Medical Leave Act ("FMLA") (Count III); disability harassment/discrimination in violation of the Americans with Disabilities Act ("ADA") (Count IV); disability harassment/discrimination in violation of the Persons with Disabilities Civil Rights Act ("PWDCRA") (Count V); retaliation in violation of the PWDCRA (Count VI); harassment/discrimination on the basis of race in violation of Title VII (Count VII); harassment/discrimination of the basis of race in violation of the ELCRA (Count VIII); and negligent infliction of emotional distress (Count IX).

12.     The majority of Caudle's allegations, including the implementation of the PIP, are time-barred and therefore not actionable, either by operation of the state law three year statute of limitations, the FMLA two year statute of limitations, or because they occurred more than 300 days prior to the filing of Plaintiff's Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC").

---

[1] Plaintiff previously filed a Complaint on November 16, 2017 against one corporation which did not exist and a second which was not Plaintiff's employer. Plaintiff filed a new Complaint in the same lawsuit on April 13, 2018, identifying the proper Defendant.

13.    The Court should dismiss Plaintiff's claims of race discrimination arising out of events within the statute of limitations because Plaintiff cannot show that any decision maker was predisposed to discriminate on the basis of race, cannot show that he was treated differently than similarly situated white employees, and cannot establish that Nielsen's articulated non-discriminatory business reasons for its actions were a pretext for discrimination.

14.    The Court should also dismiss Plaintiff's claims of race harassment arising within the statute of limitations because Plaintiff cannot show that he was subjected to a hostile work environment based on race, and cannot show that he complained of race harassment and the Company failed to take appropriate remedial action.

15.    The Court should dismiss Plaintiff's claims of disability discrimination allegedly occurring within the statute of limitations because he cannot show that "but-for" such alleged discrimination he would not have been terminated for the significant policy violations found in his homes.  In addition, Plaintiff cannot show that his leave was protected under the PWDCRA.

16.    Plaintiff's disability harassment claims allegedly occurring within the statute of limitations should be dismissed because the conduct to which Plaintiff was allegedly subjected did not, as a matter of law, constitute unlawful harassment,

and Plaintiff cannot show that he complained of such harassment and the Company failed to take appropriate remedial action.

17.    Plaintiff cannot demonstrate that he was retaliated against in violation of Title VII, the ADA, ELCRA, the PWDCRA, or the FMLA because he cannot show he engaged in protected activity under Title VII, the ELCRA, or the PWDCRA, and cannot show that any alleged protected activity was the "but-for" cause of his termination under any of the proffered statutes.

18.    Additionally, Plaintiff cannot demonstrate that he was retaliated against in violation of under the PWDCRA because leave is not a protected right under that Act.

19.    Finally, the Court should dismiss Plaintiff's claim of negligent infliction of emotional distress because it is barred by the exclusive remedy provision of the Michigan Workers Disability Compensation Act ("WDCA").

WHEREFORE, Defendant, The Nielsen Company (US) LLC, respectfully prays that this Honorable Court dismiss Plaintiff's Complaint in its entirety with prejudice and award Defendant its costs and fees incurred in this action.

/s/Megan P. Norris
Miller, Canfield, Paddock and Stone, PLC
Attorneys for Defendant
150 West Jefferson, Suite 2500
Detroit, Michigan  48226
(313) 963-6420
norris@millercanfield.com
Dated:  June 27, 2019          P-39318

6

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID CAUDLE,

       Plaintiff,

                         Case No. 2:17-cv-13737

v.

                         Hon. Mark A. Goldsmith

THE NIELSEN COMPANY (US), LLC,

       Defendant.

_____

| | |
|---|---|
| CARLA D. AIKENS, P.C. | MILLER, CANFIELD, PADDOCK |
| CARLA D. AIKENS  (P-69530) | AND STONE, P.L.C. |
| CONNOR GALLAGHER (P-82104) | MEGAN P. NORRIS  (P-39318) |
| Attorney for Plaintiff | JESSICA B.K. PASK (P-82212) |
| 615 Griswold, Suite 709 | Attorneys for Defendant |
| Detroit, Michigan  48226 | 150 West Jefferson, Suite 2500 |
| carla@aikenslawfirm.com | Detroit, Michigan  48226 |
| connor@aikenslawfirm.com | (313) 963-6420 |
| | norris@millercanfield.com |
| | pask@millercanfield.com |

_____

**BRIEF IN SUPPORT OF
DEFENDANT'S AMENDED MOTION FOR SUMMARY JUDGMENT**

**ORAL ARGUMENT REQUESTED**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................. iii

MOST CONTROLLING AUTHORITY ........................................... viii

STATEMENT OF ISSUES PRESENTED ........................................... ix

INTRODUCTION ................................................................................ 1

STATEMENT OF FACTS .................................................................... 2

    A.    The Nielsen Company And Its Policies ................................. 2

    B.    Plaintiff's Hiring As a Field Representative ......................... 5

    C.    Plaintiff's Job Duties As Field Representative ..................... 5

    D.    Plaintiff's Performance Reviews and Performance
          Improvement Plan ............................................................... 7

    E.    Plaintiff's Leaves Of Absence ............................................. 9

    F.    Plaintiff's Termination ........................................................ 10

    G.    Plaintiff's Post-Termination Complaints ............................. 12

ARGUMENT ...................................................................................... 13

I.     MANY EVENTS ALLEGED BY PLAINTIFF ARE TIME-
      BARRED. ....................................................................................... 13

    A.    Claims Of Race Or Disability Discrimination, Harassment, Or
          Retaliation In Violation Of Title VII Or The ADA Occurring
          Prior To December 29, 2015 Are Time-Barred. ................. 13

    B.    Claims Of Race Or Disability Discrimination, Race Or
          Disability Harassment, Or Retaliation In Violation Of The
          ELCRA Or PWDCRA Occurring Prior To November 16, 2014
          Are Time-Barred. ............................................................... 14

    C.    Claims Of Retaliation In Violation Of The FMLA ............. 14

    D.    Plaintiff Cannot Revive His Claims Using The Continuing
          Violations Doctrine. ........................................................... 15

II.    PLAINTIFF CANNOT ESTABLISH A PRIMA FACIE CASE OF
      DISCRIMINATION. ....................................................................... 15

    A.    Plaintiff Cannot Establish A Prima Facie Case Of Race Discrimination In Violation Of Title VII Or the ELCRA (Counts VII & VIII) .................................................................16

        1.    Plaintiff cannot establish intentional discrimination. ..............17

        2.    Plaintiff cannot establish disparate treatment discrimination............................................................................18

III.   PLAINTIFF CANNOT ESTABLISH A PRIMA FACIE CASE OF DISABILITY DISCRIMINATION IN VIOLATION OF THE ADA OR PWDCRA (COUNTS IV & V)..............................................................18

IV.   PLAINTIFF CANNOT ESTABLISH A PRIMA FACIE CASE OF RETALIATION.........................................................................................19

    A.    Plaintiff Cannot Establish A Prima Facie Case Of Retaliation In Violation Of Title VII Or The ELCRA (Counts I & II)....................19

    B.    Caudle Cannot Establish Retaliation Under The PWDCRA (Count VI) .........................................................................................21

    C.    Caudle Cannot Establish Retaliation In Violation Of The FMLA (Count III) ......................................................................................21

V.    PLAINTIFF CANNOT ESTABLISH PRETEXT. .....................................22

VI.   PLAINTIFF CANNOT ESTABLISH A HOSTILE WORK ENVIRONMENT BASED ON RACE OR DISABILITY (COUNTS IV, V, VII & VIII) ...........................................................................................24

VII.  PLAINTIFF CANNOT ESTABLISH NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS....................................................................26

CONCLUSION ........................................................................................................26

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Booker v. Brown & Williamson Tobacco Co., Inc.*,
   879 F.2d 1304 (6th Cir. 1989) ...............................................................22

*Braithwaite v. Timken Co.*,
   258 F.3d 488 (6th Cir. 2001) ................................................................23

*Buhrmaster v. Overnight Transp. Co.*,
   61 F.3d 461 (6th Cir. 1995) ..................................................................17

*Chen v. Dow Chemical Co.*,
   580 F.3d 394 (6th Cir.2009) .................................................................16

*Cline v. Catholic Diocese of Toledo*,
   206 F.3d 651 (6th Cir. 2000) ................................................................16

*Crane v. Mary Free Bed Rehab. Hosp.*,
   634 F. App'x 518 (6th Cir. 2015) .........................................................20

*E.E.O.C. v. Penton Indus. Pub. Co.*,
   851 F.2d 835 (6th Cir. 1988) ................................................................15

*Edgar v. JAC Prods, Inc.*,
   443 F.3d 501 (6th Cir. 2006) ................................................................21

*Evans v. Toys R Us, Inc.*,
   221 F.3d 1334 (6th Cir. 2000) ..............................................................13

*Faragher v. City of Boca Raton*,
   524 U.S. 775 (1998)..........................................................................24, 25

*Fox v. Eagle Distributing Co., Inc.*,
   510 F.3d 587 (6th Cir. 2007) ................................................................20

*Garg v. Macomb County Community Mental Health Services*,
   472 Mich. 263 (2005) ......................................................................14, 15

*Green v. Cent. Ohio Transit Auth.*,
   647 F. App'x 555 (6th Cir. 2016)..........................................................22

*Grizzell v. City of Columbus Div. of Police*,
    461 F.3d 711 (6th Cir. 2006) ................................................................................17

*Hartsel v. Keys*,
    87 F.3d 795 (6th Cir. 1996) ..................................................................................18

*Hazle v. Ford Motor Co.*,
    464 Mich. 456 (2001) ...........................................................................................16

*Hesse v. Ashland Oil, Inc.*,
    466 Mich. 21, 642 N.W.2d 330 (2002)..................................................................26

*Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*,
    176 F.3d 921 (6th Cir. 1999) ................................................................................17

*Kerns v. Dura Mechanical Components*,
    242 Mich. App. 1 (2000) .......................................................................................21

*Lamoria v. Health Care & Retirement Corp.*,
    233 Mich. App. 560 (1999) ...................................................................................21

*Lewis v. Humboldt Acquisition Corp.*,
    681 F.3d 312 (6th Cir. 2012) .........................................................................13, 18

*Majewski v. Automatic Data Processing, Inc.*,
    274 F.3d 1106 (6th Cir. 2001) .............................................................................23

*Mitchell v. Toledo Hospital*,
    964 F.2d 577 (6th Cir. 1992) .........................................................................16, 17

*National Railroad Passenger Corp. v. Morgan*,
    536 U.S. 101 (2002)..............................................................................................15

*Parry v. Mohawk Motors of Michigan, Inc.*,
    236 F.3d 299 (6th Cir. 2000) ...............................................................................13

*Peden v. City of Detroit*,
    470 Mich. 195 (2004) .....................................................................................18, 19

*Rymal v. Baergen*,
    262 Mich. App. 274 (2004) ..................................................................................20

*Smeigh v. Johns Manville, Inc.*,
    643 F.3d 2011 (7th Cir. 2011) ............................................................................22

*Smith v. Chrysler Corp.*,
    155 F.3d 799 (6th Cir. 1998) ..............................................................................23

*Smith v. Rock-Tenn Services, Inc.*,
    813 F.3d 298 (6th Cir. 2016) ..............................................................................24

*Spraggins v. Lakepointe Senior Care & Rehab Ctr., L.L.C.*,
    No. 08-14074, 2010 WL 3927769 (E.D. Mich. Oct. 4, 2010) ..........................17

*Teadt v. Lutheran Church Missouri Synod*,
    237 Mich. App. 567; 603 NW2d 816 (1999) ....................................................25

*Town v. Michigan Bell Telephone Co*,
    455 Mich. 688 (1997) .........................................................................................18

*University of Texas Southwest Medical Center v. Nassar*,
    133 S. Ct. 2517 (2013)........................................................................................20

*Vereecke v. Huron Valley Sch. Dist.*,
    609 F.3d 392 (6th Cir. 2010) ..............................................................................22

*Vredevelt v. GEO Group, Inc.*,
    145 Fed.Appx. 122 (6th Cir. 2005)......................................................................16

*Waldo v. Consumers Energy Co.*,
    726 F.3d 802 (6th Cir. 2013) ..............................................................................24

*Wasek v. Arrow Energy Servs., Inc.*,
    682 F.3d 463 (6th Cir. 2012) ..............................................................................22

*Williams v. General Motors Corp.*,
    187 F.3d 553 (6th Cir. 1999) ..............................................................................24

**Statutes**

29 U.S.C. § 2617 ....................................................................................................15

Americans with Disabilities Act of 1990............................................................*passim*

Title VII of the Civil Rights Act of 1964............................................................*passim*

Elliott-Larsen Civil Rights Act ...........................................................*passim*

Family and Medical Leave Act.............................................................*passim*

MCL 600.5805(10) ..............................................................................14

Michigan Persons with Disabilities Civil Rights Act .....................................*passim*

Michigan Workers Disability Compensation Act............................................3, 6, 26

**Court Rules**

Fed. R. Civ. Pro. 56..............................................................................1

Fed. R. Civ. Pro 12(b)(6) .......................................................................1

## <u>MOST CONTROLLING AUTHORITY</u>

*Booker v. Brown & Williamson Tobacco Co., Inc.*, 879 F.2d 1304 (6th Cir. 1989)

*Braithwaite v. Timken Co.*, 258 F.3d 488 (6th Cir. 2001)

*Buhrmaster v. Overnight Transp. Co.*, 61 F.3d 461 (6th Cir. 1995)

*Chen v. Dow Chemical Co.*, 580 F.3d 394 (6th Cir.2009)

*Cline v. Catholic Diocese of Toledo*, 206 F.3d 651 (6th Cir. 2000)

*Crane v. Mary Free Bed Rehab. Hosp.*, 634 F. App'x 518 (6th Cir. 2015)

*Edgar v. JAC Prods, Inc.,* 443 F.3d 501 (6th Cir. 2006)

*E.E.O.C. v. Penton Indus. Pub. Co.*, 851 F.2d 835 (6th Cir. 1988)

*Evans v. Toys R Us, Inc.*, 221 F.3d 1334 (6th Cir. 2000)

*Fox v. Eagle Distributing Co., Inc.*, 510 F.3d 587 (6th Cir. 2007)

*Green v. Cent. Ohio Transit Auth.*, 647 F. App'x 555 (6th Cir. 2016)

*Grizzell v. City of Columbus Div. of Police*, 461 F.3d 711 (6th Cir. 2006)

*Hartsel v. Keys*, 87 F.3d 795 (6th Cir. 1996)

*Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921 (6th Cir. 1999)

*Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312 (6th Cir. 2012)

*Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106 (6th Cir. 2001)

*Mitchell v. Toledo Hospital*, 964 F.2d 577 (6th Cir. 1992)

*National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002)

*Parry v. Mohawk Motors of Michigan, Inc.,* 236 F.3d 299 (6th Cir. 2000)

*Smith v. Chrysler Corp.*, 155 F.3d 799 (6th Cir. 1998)

*Smith v. Rock-Tenn Services, Inc.*, 813 F.3d 298 (6th Cir. 2016)

*Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 401 (6th Cir. 2010)

*Vredevelt v. GEO Group, Inc.,* 145 Fed.Appx. 122 (6th Cir. 2005)

*Waldo v. Consumers Energy Co.*, 726 F.3d 802 (6th Cir. 2013)

*Wasek v. Arrow Energy Servs., Inc.*, 682 F.3d 463(6th Cir. 2012)

*Williams v. General Motors Corp.*, 187 F.3d 553 (6th Cir. 1999)

## STATEMENT OF ISSUES PRESENTED

1.     Should any claim based on actions which are time-barred under the three year statute of limitations under Michigan law, the two year statute of limitations under the Family and Medical Leave Act, and the requirement that any Charge of Discrimination be filed within 300 days of the allegedly discriminatory event, be time barred?

        Defendant asserts that the answer is "Yes."

2.     Should the Court dismiss Plaintiff's claims of race discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII") and the Elliott-Larsen Civil Rights Act ("ELCRA") where Plaintiff cannot show that any decision maker was predisposed to discriminate on the basis of race, he was not treated differently than similarly situated individuals of a different race, and he cannot show that Nielsen's articulated non-discriminatory reasons for its actions were a pretext for discrimination?

        Defendant asserts that the answer is "Yes."

3.     Should the Court dismiss Plaintiff's claims of disability discrimination under the Americans with Disabilities Act of 1990 ("ADA") and the Michigan Persons with Disabilities Civil Rights Act ("PWDCRA") where leave is not a protected right under the PWDCRA, Plaintiff cannot show that "but for" his disability he would not have been terminated, and he cannot show that Nielsen's articulated non-discriminatory reasons for its actions were a pretext for discrimination?

        Defendant asserts that the answer is "Yes."

4.     Should the Court dismiss Plaintiff's claims of race and disability harassment under the above-referenced statutes where Plaintiff cannot show that he was subjected to unwelcome communication or conduct regarding his race or

disability, that such communication or conduct was because of his race or disability, that such communication or conduct was sufficiently severe or pervasive to create a hostile work environment, or that he complained of such conduct and Defendant failed to take prompt remedial action?

   Defendant asserts that the answer is "Yes."

5.  Should the Court dismiss Plaintiff's claims of retaliation under the above-referenced statutes and the Family and Medical Leave Act ("FMLA") where leave is not a protected right under the PWDCRA, Plaintiff cannot show that he engaged in protected activity under Title VII or the ELCRA, Plaintiff cannot show that protected activity was the "but-for" cause of his termination, and Plaintiff cannot show that Nielsen's articulated non-discriminatory reasons for its actions were a pretext for discrimination?

   Defendant asserts that the answer is "Yes."

6.  Should the Court dismiss Count IX of Plaintiff's Complaint, which alleges negligent infliction of emotional distress because it is barred by the exclusive remedy provision of the Michigan Workers Disability Compensation Act ("WDCA")?

   Defendant asserts that the answer is "Yes."

## **INTRODUCTION**

Plaintiff, David Caudle, is a former employee of the Nielsen Company (US), LLC ("Defendant", "Nielsen" or "the Company") who held the position of Field Representative for four and half years.  Caudle was hired by Field Manager Ryan Dinsmore.   As a Field Representative, Plaintiff was responsible for servicing Nielsen homes, *i.e.,* homes which have Nielsen equipment installed on their viewing devices in order to provide the Nielsen ratings which are sold both to those who are responsible for determining what shows are produced and aired and companies who pay to advertise on such shows.

Throughout his employment, Plaintiff was repeatedly counseled by Dinsmore, including in his annual performance evaluations and a Performance Improvement Plan ("PIP"), regarding his failure to maintain accurate data regarding the individuals and viewing devices in the homes at all times.  Plaintiff admits that using accurate data is imperative, as that is Nielsen's "product."  The producers of shows and the companies that buy advertising on those shows buy that data from Nielsen so they know who is watching.

Plaintiff, who has sickle cell anemia, missed a great deal of work throughout his employment with Nielsen.  Plaintiff admits that he was granted all of the time off he requested, he was returned to work from each leave, and that on one occasion he was allowed to return to a "light duty" position – *i.e.*, something other

1

than his regular job duties – for a period of time, even though Nielsen generally does not allow anyone to return to work to something other than their regular job.

While Plaintiff was on a leave between August and October 2016, the employees who took over Plaintiff's duties during his absence found a number of serious and unacceptable errors in Plaintiff's homes.  As a result, Plaintiff was terminated.  Plaintiff does not deny that his data was faulty; rather, he blames the homeowners or points to other non-comparable mistakes (which do not affect the integrity of the data) made by other employees.

In addition to substantive deficiencies, many of Plaintiff's allegations are time-barred, either by the applicable statute of limitations or because they occurred more than 300 days prior to the filing of Plaintiff's Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC").

## STATEMENT OF FACTS

### A.    The Nielsen Company And Its Policies

1.      Nielsen is a global measurement and data analytics company that provides viewership data to its customers.  These customers rely on Nielsen data to determine, among other things, what demographics are consuming what television or radio content (68).[2]  Nielsen collects data in part from Nielsen families (or "homes"), who allow Nielsen to install equipment that measures what they watch

---

[2] Unless otherwise indicated, cited pages are taken from Plaintiff's deposition and are attached as Exhibit 1.

on TV and listen to on the radio.  Because the data is Nielsen's product, it is imperative that the data be accurate (69).  If it is determined that Nielsen provided unreliable data to its customers, the Company is required to refund money or expend resources to correct the error (*Id.*).

2.     Nielsen maintains and enforces a number of employment policies. The Company has a written Policy Regarding Discrimination, Sexual Harassment and Workplace Relationships, which states, in pertinent part,

> Nielsen is committed to maintaining a work environment that is free of discrimination and harassment.  In keeping with this commitment, Nielsen prohibits conduct having the purpose or effect of interfering with the terms or conditions of employment or creating an intimidating, hostile or offensive work environment on the basis of an employee's race ... physical disability, mental disability, medical condition ... or any other characteristic protected by law.
>
> *   *   *
>
> Nielsen prohibits retaliation against any individual who reports discrimination or harassment or who participates in an investigation of such reports.  Retaliation is a violation of this policy and, like discrimination and harassment, may subject an individual to disciplinary action, up to and including termination.

(Ex.  2).  This Policy includes a complaint procedure which directs an employee to promptly report all incidents of violation of the Policy to the Human Resources Department or the North America Ombudsman, and the contact information for each of these is specifically set forth in the policy itself (*Id.,* p. 2).  The complaint procedure also includes contact information for the EEOC and reiterates that "[u]nder no circumstances will Nielsen tolerate any retaliatory actions against

3

anyone making a complaint, regardless of the outcome" (*Id*.).[3]   The Company's

U.S. Guide to Nielsen's Policies and Procedures also contains a complaint

procedure that references the Policy Regarding Discrimination, Sexual Harassment

and Workplace Relationships (Pertinent pages are attached as Ex. 3.  *See* p. 14).

3.    The Guide has a separate provision regarding reasonable

accommodation and a detailed description of the process for seeking

accommodation, which states:

> Reasonable accommodation is the key to this non-discrimination
> policy…It is the policy of Nielsen to reasonably accommodate
> qualified individuals with disabilities unless the accommodation
> would impose an undue hardship on the operations of Nielsen's
> business.
>
> * * *
>
> The employee shall inform his or her supervisor or a Human
> Resources Representative of the need for an accommodation. Any
> supervisor who becomes aware that an employee is not performing
> his/her job and that it may be due to a disability shall inform HR.

(*Id.*, p. 12,14).

4.    In addition to time off under the Family and Medical Leave Act,

Nielsen provides its employees paid sick days, as well as short and long term

disability, and provides detailed information regarding the process for applying for

---

[3] The Company's commitment to equal employment opportunity is re-stated for
employees in a variety of places, including the U.S. Employee Guide to Nielsen
Policies and Procedures (Ex. 3, at p.2).

4

time off (*Id.*, pp. 15-23; pertinent pages of "Your Guide to Time Away From Work, attached as Ex. 4).

5.     Plaintiff admits that he was given a Company handbook and access to a number of policies online (85).  He further admits that he was told to review (and actually reviewed) the Guide, "Your Guide to Time Away," and the "Code of Conduct" online (90, 94).

**B.     Plaintiff's Hiring As a Field Representative**

6.     Plaintiff was hired by Nielsen as a Field Representative on May 23, 2012 (Ex. 5).  Plaintiff was interviewed for the position by Ryan Dinsmore (58), a Nielsen Field Manager (66), who made the decision to hire Plaintiff (76).  Plaintiff began working as a Field Representative on May 29, 2012 (67).  Plaintiff admits that no one involved with the application process said anything about his race (62).

7.     At the time of his hire, Plaintiff's immediate supervisor was Field Supervisor David Demmon, who reported to Dinsmore (76).   According to Plaintiff, Demmon, who is white, was terminated for not addressing faults and issues within Nielsen homes and was replaced by Raul Mata (79-80).

**C.     Plaintiff's Job Duties As Field Representative**

8.     At the time of his hire, Plaintiff received a job description (70; Ex. 6). Plaintiff was also sent to training in Florida for six weeks at the beginning of his employment (86-87).

9.      As a Field Representative, Plaintiff was required to meter every television that was in use in a Nielsen home (74).  If a TV was in storage or not in use, Plaintiff was required to physically tag the TV as being in storage and "not in use" and record the same electronically (74-75).  As part of his duties, Plaintiff was to ensure that the equipment Nielsen provided to Nielsen families was working and accurately measuring viewership data in the homes to which he was assigned (72).

10.     It is important that the equipment in Nielsen family homes be working correctly and that the equipment accurately reflects the demographics of viewers in the home and what they are watching (72-73).  If Nielsen equipment is not working correctly, the Field Representative is notified of a "fault" through an internal reporting system (73).  The Company requires that its Field Representatives investigate "faults" in their homes (231).  If a fault is detected, the Field Representative is required to schedule a visit with the Nielsen home and record that visit in Ngage, a scheduling program in which Field Representatives record a wide variety of household data (115).  Although he was counselled to the contrary during his employment, Plaintiff admitted that he would clear "old" faults, which he alleges can be as few as three days old, without visiting or contacting his homes, if the faults had "resolved themselves" (231).  He also alleges that he could clear faults in homes if he believed it related back to a "known behavior", such as falling asleep with the TV on (*Id.*).  However, emails demonstrate that Plaintiff was, in

6

addition to many other things, clearing faults that he should have been investigating (Ex. 7).

**D.   Plaintiff's Performance Reviews and Performance Improvement Plan**

11.   Plaintiff was first evaluated by Dinsmore in April 2013 regarding his performance from the date of his hire in May 2012 through the end of that year (Ex. 8).  Dinsmore gave Caudle encouraging comments in his first evaluation and rated him overall as "3.0 – Meets Expectations" (*Id*.).  Plaintiff received a comparable evaluation in March 2014 for his performance in 2013 (Ex. 9).  That evaluation, however, noted that Plaintiff needed to improve his PC metered and his PC co-op rates, which measured the number of computers with meters in a home and the number of homes with computers metered respectively (146).  Plaintiff did not complain about either of these evaluations to anyone at Nielsen (140, 147).

12.   Plaintiff had a number of specific performance problems in June and July of 2014 (Ex. 10):

- Plaintiff did not input all of the necessary information into Ngage, and there was a pattern of missing or incorrect dates.  Plaintiff was counseled by Dinsmore on this issue.

- Dinsmore accompanied Plaintiff on his visit to a participating household and found errors.  Most significantly, Plaintiff had not properly identified all of the viewing devices in the home and had misidentified certain devices.  Even after Plaintiff was directed to correct his mistakes, he still missed devices and had errors.

- Plaintiff provided incorrect data regarding the gender identities of individuals in a viewing home.  In other words, Nielsen was reporting shows

as being watched by a female when they were actually viewed by a male, and vice-versa. As Dinsmore told Plaintiff, "Inaccurately reporting the gender of any of our [household] members is a huge problem for our company and has recently cost Nielsen in the hundreds of thousands of dollars to fix just one error" (*Id*.).

- A month after the earlier counseling regarding Ngage data, Plaintiff again failed to timely make two entries and Dinsmore reminded him about the importance of completing them on time.

- Caudle was well below expectations in several of his production metrics.

13. As a result of these issues, Dinsmore placed Plaintiff on a Performance Improvement Plan ("PIP") (*Id*.). Although Plaintiff testified that he believed the PIP was discriminatory and that he complained to Dinsmore at the time (97, 101), he acknowledges that he made several errors consistent with those listed in the PIP. Plaintiff admits that the occupants of one of his homes had the wrong gender labels for the occupants and that inaccurate information was being collected by Nielsen as a result (149, 151). Plaintiff further admits that he was told that he could be terminated for having incorrect demographic information (158).

14. Plaintiff also admits that devices in one of his homes had not been correctly identified, but alleges that this error could not be attributed to him because there were multiple Nielsen employees working in the home (154). However, Plaintiff acknowledges that he had ultimate responsibility for the proper installation of Nielsen equipment and identification of the devices, and that Dinsmore had to make corrections on his behalf in Ngage (155-156). In addition,

Plaintiff acknowledges that he was late updating Ngage on a number of occasions (157). Plaintiff refused to sign the PIP (158).

15.    Overall, Dinsmore gave Plaintiff a rating of "2.0 - partially meets expectations" in his 2014 performance review (Ex. 11).

16.    In 2015, Dinsmore returned Plaintiff to his "3.0-meets expectations" rating (Ex. 12). Plaintiff was also commended for his willingness to go to Dayton to help new technicians (173-174; Ex. 12). Plaintiff admits that he was pleased with his 2015 review (176).

**E.    Plaintiff's Leaves Of Absence**

17.    On November 19, 2014, Plaintiff was injured while working in a home and went on a leave of absence (Ex. 13). Plaintiff collected worker's compensation, which Nielsen did not contest, and was able to extend his leave to January 13, 2015, at which time Nielsen created a position for him that would accommodate his restrictions (160-163). Plaintiff admits that Nielsen does not typically create positions for employees with medical restrictions who cannot do their regular job (162-163). Plaintiff enthusiastically (by use of "thumbs-up" emojis and exclamation points) indicated he would return to work but stay within his restrictions (Ex. 14).

18.    Notwithstanding his acknowledgement of favorable treatment, Plaintiff alleges that Dinsmore made a number of remarks about his 2014-2015

leave.  First, Plaintiff alleges that sometime during his leave, Dinsmore told him that he would have to look for someone to fill his position if he was not going to return (131, 134, 135).  While Plaintiff also alleges that that Dinsmore and Raul Mata talked negatively about his leave in 2013 for illness and about his leave for his work related injury in late 2014 and early 2015, Plaintiff admits that he did not hear these remarks himself (81-82).   The only other comment he remembers Dinsmore making about illness was in 2015 when Dinsmore allegedly told his co-workers "don't cough by Dave, you know, he'll be sick and be out then you guys will have to cover" (195).

## F.   Plaintiff's Termination

19.    In 2016, Plaintiff took two leaves of absence (177-180).  The second began in August and ended on October 5, 2016 (180, 228).[4]   When other employees serviced his homes, they found a number of troubling and unacceptable errors.  In one home, it was noted on September 7, 2016 that Plaintiff had left a messy, mislabeled "prepack" (equipment) that was not in use in the home (Ex. 15).

---

[4] Dinsmore directed Plaintiff not to work on leave (Ex. 16).  Although Plaintiff alleges that Dinsmore would call him while he was on leave when clients had questions or Dinsmore needed help with a home in Plaintiff's area, Plaintiff admits that some of his homes would not deal with anyone but him and that one home refused to let any other Nielsen employee enter (131, 133, 136).

Plaintiff does not deny that he left equipment at a home, unplugged and not in use (213-214).[5]

20.    In a second home, Plaintiff had unplugged a useable television, told the Nielsen home not to use it, and failed to tag it (Ex. 17).  Plaintiff admits that he was told an un-metered TV in a home meant automatic termination (244).

21.    In a third home, the Nielsen employee was told by the occupants that there were six televisions in use, even though Nielsen's records only identified two (Ex. 18).   Two laptop computers that had not been previously registered and one laptop which had been recorded but listed as a Dell computer rather than Apple were also identified (*Id.*).  Plaintiff claimed that the home "never let him" upstairs or in the basement, but cannot explain why another representative who did not know the family was able to gain access (241-244).

22.    Finally, in one case Brian Molner, who was helping cover Plaintiff's territory (184) attempted a number of times to contact one of the homes to fix a fault, but was met with considerable resistance (187).  This is unsurprising because when Plaintiff was contacted by the home, Plaintiff told the homeowner that Molner was an out-of-town representative, that he "didn't know" Molner (189), and that he had not given Molner "the okay" to go into the house (188).   On

---

[5] Although Plaintiff states that he left the equipment there because the home was getting another TV, Dinsmore noted that the equipment was left there on April 25, 2016, over 4 months prior, and that Plaintiff had visited the home three times since then.

October 10, 2016, the homeowner complained to Nielsen about their interactions with Molner, citing her conversation with Plaintiff as support for her complaint (Ex. 19). Ultimately, the home was pulled from the sample because the family did not want anybody other than Plaintiff in their home and he was not available.[6]

23.     When Plaintiff returned from his leave, he was suspended pending investigation into the matters uncovered during his absence. On October 12, 2016, after consulting with HR and the Midwest Field Operations Leader, Josh Hummel, Dinsmore terminated Plaintiff for violation of policy (Ex. 20).

### G.     Plaintiff's Post-Termination Complaints

24.     Immediately after his termination, Caudle contacted Denise Fantarella in Nielsen's Human Resources department and complained that there was something inappropriate about the fact that David Shock, who he alleges is related to Dinsmore, was allowed to service the homes in Plaintiff's territory, and accused Dinsmore of setting him up for termination (Ex. 22). Plaintiff alleged that his termination was discriminatory and also suggested that his 2014 PIP had been discriminatory (*Id.*). Plaintiff admits that he had never complained to anyone in Human Resources of discrimination, harassment, or retaliation of any kind prior to his termination (239).

---

[6] The family was also given a $425 Visa gift card in satisfaction of a parting demand made by the family (Ex. 21, pp. B258).

25.     When she investigated Plaintiff's complaint, Fantarella concluded that Plaintiff had not complained about the PIP at any time prior to his termination, that the PIP was consistent with the Company's handling of other employees with comparable issues, and that there was no evidence of discrimination of any kind with regard to the events leading to his termination (Ex. 21).

26.     Plaintiff filed a Charge of Discrimination with the EEOC on October 24, 2016 and was given a "Right to Sue" letter on August 18, 2017 (Ex. 23). Plaintiff filed his Complaint in this action on November 16, 2017 (ECF 10, Pg ID 36-54).

## ARGUMENT

## I.      MANY EVENTS ALLEGED BY PLAINTIFF ARE TIME-BARRED.

### A.     Claims Of Race Or Disability Discrimination, Harassment, Or Retaliation In Violation Of Title VII Or The ADA Occurring Prior To December 29, 2015 Are Time-Barred.

Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-5(e)(1), requires that a Charge be filed within 300 days of the alleged unlawful employment practice.[7]   Because Plaintiff filed his Charge on October 24, 2016, events that occurred prior to December 29, 2015 are time-barred.  *Evans v. Toys R Us, Inc.*, 221 F.3d 1334 (6th Cir. 2000) (Title VII claims); *Parry v. Mohawk Motors of Michigan, Inc.,* 236 F.3d 299, 309 (6th Cir. 2000) (ADA claims).

---

[7] The ADA has adopted the Title VII enforcement scheme.  *Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312, 322 (6th Cir. 2012).

Several events at issue in this case occurred outside this time frame, including:

1.  Plaintiff's July 2014 PIP (148);

2.  An alleged 2014 voluntary survey regarding the job satisfaction of African American employees (125);

3.  A September 2014 Ernst and Young Audit (116-120);

4.  Plaintiff's November 2014, injury and any related allegations about comments Dinsmore or Mata may have made during this time period (81-82);

5.  Plaintiff's 2014 Annual Review, which he received on February 12, 2015 (164);

6.  Plaintiff's First Request to Transfer in 2015 (129); and

7.  Any alleged remark Dinsmore made about not "coughing on Dave" in 2015 (195).[8]

**B.  Claims Of Race Or Disability Discrimination, Race Or Disability Harassment, Or Retaliation In Violation Of The ELCRA Or PWDCRA Occurring Prior To November 16, 2014 Are Time-Barred.**

The ELCRA and PWDCRA have a three-year statute of limitations.  MCL 600.5805(10); *Garg v. Macomb County Community Mental Health Services*, 472 Mich. 263, 282 (2005).  Therefore, anything that occurred prior to November 16,

---

[8] Although in his Complaint at ¶58 (ECF 10, Pg ID 41) Plaintiff alleges that he was told by Dinsmore that his co-workers were "sick" of covering for him in 2016, in his deposition he tesitified that the comment was made in 2015 (195).

14

2014 (*i.e.* the July 2014 PIP, the alleged job satisfaction survey, and the 2014 Ernst and Young Audit) is not actionable.

### C. Claims Of Retaliation In Violation Of The FMLA.

The statute of limitations under the FMLA is two years. 29 U.S.C. § 2617. Therefore, actions occurring prior to November 16, 2015 are time-barred.

### D. Plaintiff Cannot Revive His Claims Using The Continuing Violations Doctrine.

Michigan law does not recognize the continuing violations doctrine. *Garg,* 472 Mich. at 290. Under federal law, the doctrine applies only to harassment claims, where the required element of "severe and pervasive" harassment may not be met until smaller actions accumulate over time. *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 105 (2002). *See also, E.E.O.C. v. Penton Indus. Pub. Co.*, 851 F.2d 835, 839 (6th Cir. 1988) (recognizing that the continuing violations doctrine "would lead to anomalous results and would have the effect of reducing the statutes of limitations in employment discrimination cases to a nullity").

## II. PLAINTIFF CANNOT ESTABLISH A *PRIMA FACIE* CASE OF DISCRIMINATION.

The Sixth Circuit applies the familiar *McDonnell-Douglas* burden-shifting paradigm to discrimination claims. Under this analysis, Plaintiff must first demonstrate a *prima facie* case of discrimination. If he does so, Nielsen can rebut

that presumption by articulating a legitimate, nondiscriminatory reason for the employment decision.  Once the Company articulates a legitimate, non-retaliatory reason for its decision, Plaintiff must demonstrate that the Company's proffered reason is pretextual and that race or disability discrimination was the real reason. *Mitchell v. Toledo Hospital*, 964 F.2d 577 (6th Cir. 1992);  *Chen v. Dow Chemical Co.*, 580 F.3d 394 (6th Cir.2009);  *Hazle v. Ford Motor Co.*, 464 Mich. 456, 462 (2001) (adopting the McDonnell Douglas paradigm).   The ultimate burden of proving that Nielsen engaged in unlawful discrimination or retaliation remains at all times with Plaintiff.  *Chen*, *supra,* at 400.

## A.  Plaintiff Cannot Establish A *Prima Facie* Case Of Race Discrimination In Violation Of Title VII Or the ELCRA (Counts VII & VIII)

To establish a *prima facie* case of race discrimination under Title VII or the ELCRA, Plaintiff must prove by a preponderance of the evidence that 1) he is a member of a protected class, 2) he is qualified for the position, 3) Nielsen took adverse employment action against him, and 4) evidence from which a factfinder could infer that he was the victim of unlawful discrimination.  *See, e.g., Vredevelt v. GEO Group, Inc.,* 145 Fed.Appx. 122, 127 (6th Cir. 2005).

As a preliminary matter, Plaintiff cannot show that he was qualified for his position or that he was "performing at level which met [her] employer's legitimate expectations."  *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 658 (6th Cir.

16

2000).  Clearly, violating Company policy was not meeting Nielsen's expectations.  But even if Plaintiff could make this showing, he cannot show the requisite discriminatory intent.

Plaintiff may establish Title VII race discrimination through either direct or circumstantial evidence.  *Grizzell v. City of Columbus Div. of Police*, 461 F.3d 711, 719 (6th Cir. 2006).  Direct evidence is "evidence that proves the existence of a fact without requiring any inferences."  *Id*.  This evidence, "if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions."  *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999).  In absence of direct evidence, Plaintiff must establish that similarly-situated non-African Americans were treated more favorably than he.  See, e.g., *Mitchell,* 964 F.2d at 583.

### 1.    **Plaintiff cannot establish intentional discrimination.**

Plaintiff does not allege that Dinsmore ever made any derogatory comment regarding race.[9]  Furthermore, it is a well-established principal that "An individual who is willing to hire . . . a person of a certain class is unlikely to fire them simply

---

[9]  At most, Plaintiff states that Dinsmore referred to African Americans as "you people" as it related to a voluntary survey regarding work satisfaction in 2014 (125).  This alleged comment is time-barred from consideration under both the Title VII and ELCRA claims, but even if it were not, this statement is not unambiguous evidence of discriminatory animus.  *See, e.g., Spraggins v. Lakepointe Senior Care & Rehab Ctr., L.L.C.*, No. 08-14074, 2010 WL 3927769, at *19 (E.D. Mich. Oct. 4, 2010) ("Moreover, 'you people' is not, on its face, a term that is race-based") (unpublished cases attached as Ex. 27).

because they are a member of that class." *Buhrmaster v. Overnight Transp. Co.*, 61 F.3d 461, 463 (6th Cir. 1995).  See also *Hartsel v. Keys*, 87 F.3d 795, 804 n. 9 (6th Cir. 1996).[10]  Dinsmore made the decision to hire Plaintiff, placed Plaintiff on the PIP, gave Plaintiff evaluations Plaintiff agrees were fair both before and after the PIP, and participated in the decision to terminate Plaintiff.  Plaintiff's race was the same throughout these actions, establishing that a factor other than race – such as Dinsmore learning of the additional violations – was the basis for the decision.

> **2.     Plaintiff cannot establish disparate treatment discrimination.**

Plaintiff has not identified anyone who engaged in the violations for which he was terminated after previously being placed on a PIP and was not terminated.  Nor can Plaintiff dispute that many Ryan Dinsmore terminated many white employees (Ex. 24, at p. 4-5).

## III.  PLAINTIFF CANNOT ESTABLISH A *PRIMA FACIE* CASE OF DISABILITY DISCRIMINATION IN VIOLATION OF THE ADA OR PWDCRA (COUNTS IV & V).

To establish a *prima facie* case of disability discrimination, Plaintiff must show that:  (1) he is an individual with a disability; (2) he is otherwise qualified to perform the job requirements, with or without reasonable accommodation; and (3) he was discriminated against because of her disability.  *Lewis,* 681 F.3d 312;

---

[10] The same-actor inference is also applicable under Michigan law. *Town v. Michigan Bell Telephone Co*, 455 Mich. 688, 701 (1997).

*Peden v. City of Detroit*, 470 Mich. 195, 205 (2004).  The ultimate burden of proof is always on Plaintiff to prove that the employer has failed to "accommodate" the disability and that the disability is the "but-for" cause of the adverse action.  (*Id.*).

Plaintiff has no evidence to show that he was terminated because of his disability.  While Plaintiff alleges that in 2015 Dinsmore suggested that co-workers were tired of covering for him, Plaintiff does not allege that any action was taken against him at that time.  Plaintiff presents no evidence that his sickle-cell anemia was the "but for" cause for his termination.[11], and even if not barred under PWDCRA statute of limitations, none of the comments can show that Caudle's sickle cell anemia was the "but-for" cause for his termination in light of the significant policy violations found in his homes.  Therefore Caudle's disability discrimination claims should be dismissed.

## IV.   PLAINTIFF CANNOT ESTABLISH A *PRIMA FACIE* CASE OF RETALIATION.

### A.     Plaintiff Cannot Establish A *Prima Facie* Case Of Retaliation In Violation Of Title VII Or The ELCRA (Counts I & II).

To establish a *prima facie* case of retaliation, Plaintiff must prove that: (1) he engaged in a protected activity; (2) the decision-maker was aware of the

---

[11]  In August 2016, when Plaintiff was out on an extended leave for sickle cell anemia, Dinsmore, in a communication with Human Resources, wrote, "This is the guy who is on leave a few months/year."  In fact, Plaintiff was on leave for a few months in 2014-2015 and again in 2016, Dinsmore was simply identifying for HR who Plaintiff was on the list of individuals they were discussing (Ex. 25, at p. 3).

protected activity; (3) he suffered an adverse employment action; and (4) there was a causal connection between the protected activity and the adverse employment action. *Fox v. Eagle Distributing Co., Inc*., 510 F.3d 587, 592 (6th Cir. 2007). The protected activity must be a "significant factor" in the adverse employment action. *Rymal v. Baergen*, 262 Mich. App. 274, 303 (2004); *Crane v. Mary Free Bed Rehab. Hosp.*, 634 F. App'x 518, 526 (6th Cir. 2015).

Plaintiff cannot show that he engaged in protected activity. Nielsen has clear policies regarding the process for complaining of discrimination. Plaintiff never made any complaint pursuant to that process until after he was terminated, when he complained to Human Resources.[12]

Moreover, even assuming that Plaintiff's alleged statements constitute protected activity, Plaintiff must prove that "but for" his complaint, he would not have been terminated. *University of Texas Southwest Medical Center v. Nassar*, 133 S. Ct. 2517, 2531 (2013). Plaintiff has no evidence of any connection between his alleged complaint and the termination, much less evidence that but for his complaint about his PIP (almost two years prior to his termination) or the survey (allegedly sent between one and two years prior to his termination), he would not

---

[12] Although Caudle asserts that he complained to Dinsmore about his PIP and the voluntary survey prior to his termination, both acts fall well outside the statute of limitations, and Plaintiff admits that subsequent to that time Dinsmore gave him a favorable review and everything was fine.

have been terminated.  Therefore, his retaliation claims under Counts I and II must fail.

**B.  Caudle Cannot Establish Retaliation Under The PWDCRA (Count VI)**

Plaintiff alleges that Nielsen retaliated against him in violation of the PWDCRA when it terminated him for taking protected leave.  However, unlike the ADA or FMLA, the PWDCRA does not require an employer to grant any medical leave as an accommodation and does not provide a right to reinstatement at the conclusion of any leave.  *Lamoria v. Health Care & Retirement Corp.*, 233 Mich. App. 560 (1999).  *See also, Kerns v. Dura Mechanical Components*, 242 Mich. App. 1 (2000).  In other words, nothing in the PWDCRA prohibits an employer from taking action, up to and including termination, as a result of an employee's leaves of absence.  Because Plaintiff had no right to any leave under the PWDCRA, raising complaints regarding how his leave was handled, or his termination after his leave, does not constitute protected activity. Therefore, Plaintiff's claim of retaliation under the PWDCRA must be dismissed.

**C.  Caudle Cannot Establish Retaliation In Violation Of The FMLA (Count III)**

The Sixth Circuit applies the familiar *McDonnell-Douglas* burden-shifting paradigm to FMLA retaliation claims.  *Edgar v. JAC Prods, Inc.,* 443 F.3d 501, 508 (6th Cir. 2006).  Plaintiff cannot establish any causal connection between his

21

2016 leave and Dinsmore's decision to terminate his employment. Plaintiff admits that he was granted leaves throughout his employment.[13] Plaintiff also admits that he had been told that inaccurate data was a basis for immediate termination, and he had already been placed on a PIP for a previous incident.

It is insufficient to rely on proximity alone to establish a case of retaliation. Indeed, "…timing evidence, by itself, is rarely sufficient to create a jury question. That is especially true here where there was an intervening event leading to [Plaintiff's] termination." *Smeigh v. Johns Manville, Inc*., 643 F.3d 2011 (7th Cir. 2011); *Booker v. Brown & Williamson Tobacco Co., Inc.*, 879 F.2d 1304, 1314 (6th Cir. 1989); *Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 401 (6th Cir. 2010); *Wasek v. Arrow Energy Servs., Inc.*, 682 F.3d 463, 472 (6th Cir. 2012); *Green v. Cent. Ohio Transit Auth.*, 647 F. App'x 555, 560 (6th Cir. 2016).

Here, as Plaintiff testified and the record shows, the intervening event was the discovery of the numerous problems with Plaintiff's homes. Plaintiff does not dispute that the problems existed. As a result, Plaintiff's poor performance operates to sever any perceived causal connection based on the temporal proximity between him pursuing FMLA leave and his discharge.

---

[13] To the contrary, by email, Dinsmore confirmed with Human Resources that he was to treat Plaintiff just like any other employee, even though he had concerns about Plaintiff's mental health as a result of conflicting information he was receiving (Ex. 26).

## V.    PLAINTIFF CANNOT ESTABLISH PRETEXT.

Even if Plaintiff could establish a *prima facie* case of discrimination or retaliation, the Company has articulated a non-discriminatory business reason for its actions – Plaintiff was terminated after recording significant errors regarding the data in his homes, despite previously being given a second chance and placed on a PIP.  Therefore, Plaintiff must prove that the articulated reasons for his termination were a pretext for unlawful discrimination.

Plaintiff has not refuted that Dinsmore had the experiences in his home visits that formed the basis for his decision.    In fact, Plaintiff admits that if Dinsmore found the issues he claims he did, those issues would be very problematic for Nielsen.    "[A]s long as an employer has an honest belief in its proffered nondiscriminatory reason for discharging an employee, the employee cannot establish that the reason was pretextual simply because it is ultimately shown to be incorrect."  *Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1117 (6th Cir. 2001); *Braithwaite v. Timken Co.*, 258 F.3d 488, 494 (6th Cir. 2001).  *See also, Smith v. Chrysler Corp.*, 155 F.3d 799, 807 (6th Cir. 1998).  It is sufficient that Dinsmore came to the conclusion that Plaintiff had engaged in the actions for which he was terminated.  Plaintiff has no evidence that his race, disability, leaves of absence, or complaints played any role in the decision.

23

## VI.   PLAINTIFF CANNOT ESTABLISH A HOSTILE WORK ENVIRONMENT BASED ON RACE OR DISABILITY (COUNTS IV, V, VII & VIII).

To establish a hostile work environment claim, Plaintiff must show that "(1) he belonged to a protected group, (2) he was subject to unwelcome harassment, (3) the harassment was based on [race or disability], (4) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment, and (5) the defendant knew or should have known about the harassment and failed to act." *Waldo v. Consumers Energy Co.*, 726 F.3d 802, 813 (6th Cir. 2013). "Discrimination in this form occurs '[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Williams v. General Motors Corp.*, 187 F.3d 553, 560 (6th Cir. 1999). "To succeed, a plaintiff must show that the work environment was both subjectively and objectively hostile; in other words, that the plaintiff not only perceived the work environment as hostile, but that a reasonable person would have found it hostile or abusive as well." *Smith v. Rock-Tenn Services, Inc.*, 813 F.3d 298, 309 (6th Cir. 2016). "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to" a hostile work environment. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788

(1998).  Rather, "conduct must be extreme to amount to a change in the terms and conditions of employment." *Id*.

Plaintiff alleges only one ambiguous allegedly racial comment ("you people") outside the statute of limitations.  Even if within the statute of limitations, this one alleged comment is not sufficiently severe and pervasive to give rise to a cause of action for hostile environment race harassment.

Similarly, the alleged comments regarding Plaintiff's disability are barred by the statute of limitations.  Moreover, Plaintiff's allegation of harassment based on his medical condition is based on inadmissible hearsay – comments Plaintiff says he learned about from his co-workers.  Plaintiff himself heard only one alleged comment:  "don't cough by Dave, you know, he'll be sick and be out then you guys will have to cover."  Again, this comment does not give rise to a hostile environment harassment claim.

Additionally, Plaintiff never complained to Nielsen regarding alleged discrimination by Dinsmore during his employment (239).  This is fatal to Plaintiff's claim.

## VII. PLAINTIFF CANNOT ESTABLISH NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS.

Michigan recognizes the tort of negligent infliction of emotional distress only when a plaintiff witnesses negligent injury to a third party and suffers mental disturbance as a result. *Teadt v. Lutheran Church Missouri Synod*, 237 Mich. App. 567, 582 n6; 603 NW2d 816, 823 (1999), citing *Duran v. Detroit News, Inc.,* 200 Mich. App. 622, 629; 504 N.W.2d 715 (1993). Plaintiff does not allege harm from watching someone else be injured, so this cause of action is not viable.

Moreover, Plaintiff's claim of negligent infliction of emotional distress is barred by the exclusive remedy provision of the Michigan Workers Disability Compensation Act ("WDCA"). *Hesse v. Ashland Oil, Inc*., 466 Mich. 21, 642 N.W.2d 330 (2002). The WDCA provides Plaintiff's "exclusive remedy against the employer for a personal injury or occupational disease." MCL 418.131(1). Therefore this claim is meritless.

## CONCLUSION

WHEREFORE, Defendant respectfully prays that this Honorable Court dismiss Plaintiff's Complaint in its entirety and award Defendant its costs and attorney fees incurred in this action.

Respectfully submitted,

/s/Megan P Norris
Miller, Canfield, Paddock and Stone, PLC
Attorneys for Defendant
150 West Jefferson, Suite 2500
Detroit, Michigan  48226
313-963-6420
norris@millercanfield.com
P-39318

Dated:  June 27, 2019

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 27, 2019, I electronically filed the foregoing paper with the Clerk to the Court using the ECF system which will send notification of such filing.

<u>/s/Megan P Norris</u>

33809988.5\088888-04647

28