IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID CAUDLE,

      Plaintiff,

                        Case No. 2:17-cv-13737

v.

                        Hon. Mark A. Goldsmith

THE NIELSEN COMPANY (US), LLC,

      Defendant.

_____

| | |
|---|---|
| CARLA D. AIKENS, P.C. | MILLER, CANFIELD, PADDOCK |
| CARLA D. AIKENS  (P-69530) | AND STONE, P.L.C. |
| CONNOR GALLAGHER (P-82104) | MEGAN P. NORRIS  (P-39318) |
| Attorney for Plaintiff | JESSICA B.K. PASK (P-82212) |
| 615 Griswold, Suite 709 | Attorneys for Defendant |
| Detroit, Michigan  48226 | 150 West Jefferson, Suite 2500 |
| carla@aikenslawfirm.com | Detroit, Michigan  48226 |
| connor@aikenslawfirm.com | (313) 963-6420 |
| | norris@millercanfield.com |
| | pask@millercanfield.com |

_____

**REPLY BRIEF IN SUPPORT OF DEFENDANT'S
AMENDED MOTION FOR SUMMARY JUDGMENT**

**ORAL ARGUMENT REQUESTED**

"LOCAL RULE CERTIFICATION:  I, Megan P. Norris, certify that this document complies with Local Rule 5.1(a), including:  double-spaced (except for quoted materials and footnotes); at least one-inch margins on the top, sides, and bottom; consecutive page numbering; and type size of all text and footnotes that is no smaller than 10-1/2 characters per inch (for non-proportional fonts) or 14 point (for proportional fonts).  I also certify that it is the appropriate length.  Local Rule 7.1(d)(3).

## <u>REPLY TO COUNTER-STATEMENT OF MATERIAL FACTS</u>

Defendant does not dispute the allegations set forth in ¶¶4 and 15 of Plaintiff's Counter-Statement of Additional Material Facts.   While Defendant disputes allegations set forth in ¶¶2, 6, 13, 14, 16, for the purposes of this Motion Plaintiff's allegations are presumed to be true.   Defendant disputes the remaining additional facts for the reasons outlined below:

1.    Defendant disputes that Plaintiff "enjoyed a near perfect work record." *See* Defendant's Statement of Facts, ¶¶ 10-15, 19-22.   Defendant further disputes that Plaintiff's July 2014 Performance Improvement Plan was discriminatory.   Ryan Dinsmore testified that the primary reason for the PIP was Plaintiff's inaccurate data, and that he then used the PIP as an opportunity to counsel Plaintiff on other areas for improvement (Dinsmore, 44-48).[1]   Other employees have been immediately terminated for the inaccurate data infraction (Dinsmore, 67-73).   In addition, Defendant disputes that Plaintiff was not accused of entering incorrect demographic information as part of his termination.   *See* Defendant's Statement of Facts, ¶¶20-21.

3.    The September 2014 external audits to which Plaintiff refers were conducted by Ernst & Young (E&Y) and were random (Dinsmore, 26-27; *See also* Ex. 29 hereto).   Plaintiff's hearsay testimony regarding a statement allegedly made

---

[1] Cited pages from Ryan Dinsmore's Deposition are attached as Exhibit 28.

by somebody from E&Y cannot be used to defeat a motion for summary judgment. *N. Am. Specialty Ins. Co. v. Myers*, 111 F.3d 1273, 1283 (6th Cir. 1997).

5.    Defendant disagrees that Plaintiff "worked in total two-three weeks" between May and October 2016. Plaintiff's timeline in ¶5 makes clear that he worked for two weeks in June, the entire month of July, and one week in August. Furthermore, Plaintiff admitted that his injury happened at his home when he pushed himself out of bed (178).

7.    The testimony Plaintiff cited does not support the contention that Dinsmore "berated" Plaintiff "on a daily basis" while he was on leave (217).[2] Plaintiff also admits that this statement is entirely inconsistent with direction Dinsmore gave to Plaintiff by email. *See* Defendant's Statement of Facts, ¶19 fn. 4.

8.    Defendant disputes that Dinsmore or Plaintiff's co-workers were "hostile" with Plaintiff.  Plaintiff acknowledges he received favorable treatment with regard to his medical leaves.  *See* Defendant's Statement of Facts, ¶¶17-18. With regard to Plaintiff's Exhibit D (ECF 43-4, PgID.1292-1294), which contains an email from Dinsmore to Nielsen HR representative Amanda Culver, Dinsmore explained that he was responding to her question about whether Plaintiff was on leave: "Because I was using that to - to explain which person it was.  And if I would have just said, 'Dave Caudle', she wouldn't – may not have remembered

---

[2] Unless otherwise indicated, cited pages are taken from Plaintiff's deposition and are attached as Exhibit 30.

2

which person it was until I clarified what - what we might have talked about in our - our most recent discussion" (Dinsmore, 64).

9.     Defendant disputes that Dinsmore ever showed "disdain" for Plaintiff. Plaintiff's attempt to read Dinsmore's emotions into Plaintiff's Exhibit F (ECF 43-6, PgID.1300-1305), which contains emails between HR and Dinsmore, is pure conjecture and speculation.   The document speaks for itself and Plaintiff's narration regarding Dinsmore's feelings are unsubstantiated by the record. Dinsmore testified that Plaintiff was "outgoing", "fun" and a "good guy" (Dinsmore, 52-53, 130).

10.    There is no testimony on the record that supports the contention that Plaintiff's locations or territories were "targeted" for "audits" during his FMLA leave in 2016.   Plaintiff's properties were not "audited" during this period; a number of quality issues were found while Plaintiff's homes were serviced by other employees, as was necessary in Plaintiff's absence.   *See* Defendant's Statement of Facts, ¶¶19-23.   Plaintiff testified that he understood others would need to service his area while he was out (184-185).

11.    Plaintiff's characterization of Dinsmore's testimony is incomplete and misleading as it relates to Plaintiff's inability to access to the basement of his Nielsen family home.   *See* Defendant's Statement of Facts, ¶21.   Dinsmore testified that the proper course of action when a family restricts a Nielsen

3

employee from an area of the home is to either remove the home from the sample until that area can be accessed or to note the restricted area in the contact report, neither of which Plaintiff did (Dinsmore, 131-132).

12.     Defendant disputes that Plaintiff's characterization of the events in this paragraph is "completely different" from Dinsmore's testimony.  As Dinsmore testified, after Dave Shock was called out to the house, there were significant problems and policy violations found within this home that were attributed to Plaintiff by the home owner.  *See* Defendant's Statement of Facts, ¶¶19-21; Dinsmore 77-82).  This is not inconsistent with Plaintiff's testimony, as Plaintiff's version of events ends with Shock visiting the home and discovering policy violations (218-219).

## I.     PLAINTIFF'S CLAIM OF RACE DISCRIMINATION (COUNTS VII AND VIII)

In his Response Brief, Plaintiff argues both intentional and disparate treatment race discrimination.  Plaintiff did not actually plead either of those claims in his Amended Complaint.  Counts VII and VIII, entitled "Harassment-Discrimination on the Basis of Race" in violation of Title VII and the ELCRA, respectively, do not assert any form of race discrimination other than harassment.[3]

---

[3] Plaintiff's Response Brief fails to address Defendant's arguments regarding Plaintiff's claims of negligent infliction of emotional distress (Count IX) or disability harassment (Counts IV and V), and fails to address Defendant's arguments regarding Plaintiff's claim of race harassment (Counts VII and VIII)

4

However, even if Plaintiff had asserted claims of intentional or disparate treatment race discrimination, his claims must fail.

First, Plaintiff bases his claim that "direct evidence of discrimination" exists on his allegation that Ryan Dinsmore referred to African Americans as "you people" when discussing a voluntary survey regarding work satisfaction in 2014 (Pl. Resp., ECF 43, PgID. 1070). Taking Plaintiff's testimony as true, this alleged comment occurred outside the statute of limitations. Moreover, a single ambiguous statement made two years before the employment decision at issue, by the supervisor who hired Plaintiff, is not sufficient to constitute direct evidence of discriminatory animus. *Hopkins v. Elec. Data Sys. Corp.*, 196 F.3d 655, 661 (6th Cir.1999); *Foster v. Michigan*, 573 F. App'x 377, 393 (6th Cir. 2014). Furthermore, Plaintiff's Response ignores the same-actor inference that creates a strong presumption against a discriminatory motive when the alleged discriminator (Dinsmore) is the same person who hired Plaintiff knowing his race. *Buhrmaster v. Overnight Trans. Co.*, 61 F.3d 461, 463 (6th Cir. 1995).

---

other than simply stating, "Plaintiff has a valid claim for racial discrimination/harassment" (Pl. Resp., ECF 43, PgID. 1070). Additionally, Plaintiff does not dispute that for purposes of his claims of disability and race discrimination in Counts IV, V and VIII, events occurring prior to November 16, 2014 (state claims) and December 29, 2015 (federal claims) are time-barred (Pl. Resp., ECF 43, PgID. 1064-1065). In his Response, Plaintiff mistakenly states that he filed his EEOC Charge on October 16, 2016, when it was actually filed October 24, 2016, making December 29, 2015 and November 16, 2014, the cut-offs for purposes of the statute of limitations (See Exhibit 31).

Second, Plaintiff attempts to show that he was treated differently than similarly-situated persons of a different class by alleging, "Plaintiff was attempting to move to a position with the audit team; however, the position was given to a white employee who did not even apply" (Pl. Resp., ECF 43, PgID. 1070). This assertion ignores Plaintiff's own testimony that Brian Burkhardt, the successful candidate, did "put in" his application (202) and that Plaintiff had already been terminated at the time the position was filled (*Id*.), and that a white employee's (Ed Chesney) request to transfer was denied as well (202-203).

Finally, even if Plaintiff could establish a *prima facie* case, Plaintiff cannot show that the basis for the decision to terminate him was a pretext for race discrimination. It is undisputed that inaccurate data was a serious offense that could cost the Company a great deal of money and problems with clients, and that others were terminated for the same reason (69, 158).

## II.    PLAINTIFF'S CLAIMS OF DISABILITY DISCRIMINATION (COUNTS IV AND V)

Plaintiff argues that certain statements and actions by Dinsmore,[4] none of which, Plaintiff admits, were made in relation to the termination decision, are direct evidence of discrimination (Pl. Resp., ECF 43, PgID. 1066-1067).

---

[4] In so doing, Plaintiff misrepresents the records. Plaintiff inaccurately claims that Exhibit C of his Response shows that "Ryan Dinsmore only refers to Plaintiff, not by name, but instead by the amount of time he has missed because he was out sick" (Pl. Resp., ECF 43, PgID. 1289-1290). As that document shows, when prompted

6

To come to the conclusion that there is direct evidence that Plaintiff's disability prompted his termination, a trier of fact would have to first infer that Dinsmore's statements and action show disdain for Plaintiff's illness, and then that such disdain may have played a role in the decision to terminate Plaintiff. *Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544, 550 (6th Cir. 2004) (that the immediate supervisors called plaintiffs "old farts" on a "fairly regular basis" was not direct evidence because "an inference [was] required that such bias may have played a role in the decision to select these plaintiffs" as part of the reduction in force).[5] The evidence is to the contrary – Dinsmore had previously allowed Plaintiff to return to work even though Plaintiff could not yet perform the essential duties of his position, despite Company policy to the contrary, for which Plaintiff was very grateful (ECF 36-15; PgID.557-559). The fact that Dinsmore expressed concern regarding Plaintiff's health or reminded Human Resources that the person

---

for a reminder about whether or not Plaintiff was on leave by Amanda Culver of HR, Dinsmore refreshed her memory and responded that he had taken multiple leaves that year. *Id*. Similarly, Plaintiff claims that there is an "email … accusing Plaintiff of having a mental health problem to [his] bosses." However, that document plainly shows that he would not be treated any differently regardless his mental health status (Pl. Resp., ECF 43-6, PgID. 1300-1305).

[5] *Chattman v. Toho Tenax Am., Inc.*, 686 F.3d 339, 347 (6th Cir. 2012) is distinguishable because there was evidence of unambiguous racial slurs directly related to the adverse action. A more analogous case is *Hopkins v. Elec. Data Sys. Corp, supra*, where it was determined that an "isolated and ambiguous comment made by [a supervisor] about 'the guy on Prozac' did not establish direct evidence of discrimination." 196 F.3d at 661.

they were discussing was the person who had been on leave does not show either animus for Plaintiff or action based on such animus.[6]

## III.   PLAINTIFF'S CLAIMS OF RETALIATION (COUNTS I, II, III)[7]

Plaintiff claims that his "engaging in FMLA … would constitute protected activity under Title VII" and the ELCRA (Pl's Resp., ECF 43, PgID.1069-1070). There is simply no legal support for this position, and courts that have considered this argument have ruled directly to the contrary.[8]   Plaintiff also claims that his post-termination complaint of discrimination constitutes a protected activity.

---

[6] Plaintiff dedicates an entire section of his Response to Defendant's investigation of Plaintiff's post-termination complaint of discrimination.  Defendant has never "urged" this Court to follow the dissent in *Staub v. Proctor Hospital*.  In fact, Plaintiff has repeatedly admitted that there were problems at a number of his houses, which corroborates Denise Fantarella's investigation. To name one example, Plaintiff does not deny that there were problems found in one of his homes by Dave Shock but states that Shock "made a bigger deal about it to [Dinsmore]" (219). Plaintiff also believed he could clear "faults" emanating from his homes (231), even after he was clearly coached on not doing so by Dinsmore (Def's Motion, ECF 36, PgID.423). Furthermore, in his complaint to Fantarella, Caudle admits to the problems that were found in his homes. (ECF 36-23, PgID.585-88). Therefore, Plaintiff himself corroborates the findings of the investigation and Plaintiff's "cat's-paw theory" is inapplicable.

[7] The heading of part V of the Argument section in Plaintiff's Response is "Plaintiff has a valid claim of Title VII, ELCRA, ADA, PWDCRA Retaliation." However, Plaintiff never pled an ADA retaliation claim.

[8] *See, e.g., Sotomayor v. City of New York*, 862 F.Supp.2d 226, 262 (E.D.N.Y. 2012); *Cooper v. Spartanburg Cty. Sch. Dist. No. 7*, 2016 WL 4491870, at *5 (D.S.C. 2016); *Moore v. Nat'l Tire & Battery*, 2013 WL 5587295, at * 3 (D. Md. 2013); *Bowman v. Holopack Intern. Corp.*, 2017 WL 4481130, at *14 (D.S.C. 2017); *Male v. Tops Markets, LLC*, 2010 WL 4319769, at *2 (W.D.N.Y. 2010); *Saellam v. Norfolk S. Corp.*, 2008 WL 5286836, at *11 (W.D. Pa. 2008) (Ex.32).

8

Assuming, *arguendo,* that is correct, this protected activity cannot possibly have been the cause of Plaintiff's termination that had already happened.  Likewise, even assuming that Plaintiff engaged in a protected activity when he complained about his PIP and the voluntary survey (which are both outside of the statute of limitations), Plaintiff fails to show a causal connection between such an activity and his termination and instead testified that Dinsmore subsequently gave him a favorable review and everything was fine (175-176).

Plaintiff also provides no explanation as to how he engaged in a protected activity under PWDCRA.  As discussed in Defendant's Brief at p. 21 (ECF 36; PgID.438)**,** Plaintiff's leaves of absence do not constitute protected activity under the PWDCRA.  Plaintiff does not cite any evidence to support a claim that he was retaliated against simply for having a medical condition; he admits Ryan Dinsmore was aware of that condition throughout his employment and that for much of that employment he had no problems (175-176).  Accordingly, this Court should dismiss Plaintiff's retaliation claims.

## IV.  PLAINTIFF'S CLAIM OF RETALIATION UNDER THE FMLA (COUNT III)

Plaintiff relies solely on temporal proximity between his FMLA leave in August 2016 and his termination to establish their causal connection.[9]  However, in

---

[9] Plaintiff does not dispute that actions occurring prior to November 16, 2015 are time-barred for the purpose of the FMLA claim.

an FMLA retaliation claim, proximity in time alone does not establish causation. *See, e.g., Chandler v. Specialty Tires of Am. (Tennessee), Inc.*, 283 F.3d 818, 826 (6th Cir. 2002). Here, the performance problems discovered while Plaintiff was on leave operate to severe any perceived connection between Plaintiff taking FMLA leave and his discharge.

Even assuming that a *prima facie* case of FMLA retaliation is established, Plaintiff has not established that Defendant's proffered reason for discharging him is a pretext for unlawful retaliation. *EEOC v. Ford Motor Co.*, 782 F.3d 753, 767 (6th Cir. 2015); *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993). Plaintiff does not dispute that there were unacceptable errors and violations of Nielsen's policies discovered in his homes, and that employees have been terminated for such violations. He cannot show that the alleged violations did not occur or that they are not sufficient grounds for termination, nor does he present evidence to show that retaliation was the real motivation for his discharge. *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 148 (2000).

## CONCLUSION

WHEREFORE, Defendant respectfully prays that this Honorable Court dismiss Plaintiff's Complaint in its entirety with prejudice.

Respectfully submitted,
/s/Megan P. Norris

Dated: August 13, 2019

10

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 13, 2019, I electronically filed the foregoing paper with the Clerk to the Court using the ECF system which will send notification of such filing.

/s/Megan P Norris
Miller, Canfield, Paddock and Stone, PLC
Attorneys for Defendant
150 West Jefferson, Suite 2500
Detroit, Michigan  48226
313-963-6420
norris@millercanfield.com
P-39318

34112906.3\136247-00002

1