# **Exhibit A**

 Caution
As of: October 5, 2020 10:51 PM Z

# Vance by & Through Hammons v. United States

United States Court of Appeals for the Sixth Circuit

June 25, 1999, Filed

NO. 98-5488

**Reporter**
1999 U.S. App. LEXIS 14943 *

CARL L. VANCE, by and through DEBRA VANCE HAMMONS, Administratrix of the Estate of Carl L. Vance, Plaintiff-Appellant, v. UNITED STATES OF AMERICA, Defendant-Appellee.

**Notice:** [*1] NOT RECOMMENDED FOR FULL-TEXT PUBLICATION. SIXTH CIRCUIT RULE 206 LIMITS CITATION TO SPECIFIC SITUATIONS. PLEASE SEE RULE 206 BEFORE CITING IN A PROCEEDING IN A COURT IN THE SIXTH CIRCUIT. IF CITED, A COPY MUST BE SERVED ON OTHER PARTIES AND THE COURT. THIS NOTICE IS TO BE PROMINENTLY DISPLAYED IF THIS DECISION IS REPRODUCED.

**Subsequent History:** Reported in Table Case Format at: *1999 U.S. App. LEXIS 24452*.

**Prior History:** ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF KENTUCKY. 94-00338. Forester. 3-2-98.

**Disposition:** AFFIRMED.

## LexisNexis® Headnotes

Civil Procedure > Appeals > Standards of Review > Abuse of Discretion

Civil Procedure > Discovery & Disclosure > Discovery > Misconduct During Discovery

*HN1*[ ] **Standards of Review, Abuse of Discretion**

A district court's decision to invoke *Fed. R. Civ. P. 37* sanctions is reviewed by the court for an abuse of discretion.

Civil Procedure > Appeals > Standards of Review > Abuse of Discretion

Civil Procedure > Appeals > Standards of Review > Clearly Erroneous Review

*HN2*[ ] **Standards of Review, Abuse of Discretion**

An abuse of discretion occurs when (1) the district court's decision is based on an erroneous conclusion of law, (2) the district court's findings are clearly erroneous, or (3) the district court's decision is clearly unreasonable, arbitrary or fanciful.

Civil Procedure > Discovery & Disclosure > Discovery > Misconduct During Discovery

*HN3*[ ] **Discovery, Misconduct During Discovery**

*Fed. R. Civ. P. 37(c)(1)* mandates that a trial court punish a party for discovery violations in connection with

*Fed. R. Civ. P. 26* unless the violation was harmless or is substantially justified.

Civil Procedure > Appeals > Standards of Review > De Novo Review

Civil Procedure > Appeals > Summary Judgment Review > General Overview

Civil Procedure > Appeals > Summary Judgment Review > Standards of Review

**HN4[ ]** **Standards of Review, De Novo Review**

The appellate court reviews the district court's grant of summary judgment de novo, and its findings of fact for clear error.

Civil Procedure > Appeals > Standards of Review > Clearly Erroneous Review

**HN5[ ]** **Standards of Review, Clearly Erroneous Review**

A finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.

Torts > ... > Proof > Evidence > Expert Testimony

Torts > Malpractice & Professional Liability > Healthcare Providers

**HN6[ ]** **Evidence, Expert Testimony**

In order to prevail in a medical malpractice suit, a plaintiff must prove the following two elements: (1) that the challenged treatment was a deviation below the applicable standard of care required and expected of a reasonably competent practitioner; and (2) that the alleged negligent act proximately caused the claimed injury.

**Counsel:** For CARL L. VANCE, Plaintiff - Appellant: Neil E. Duncliffe, Georgetown, KY.

For UNITED STATES OF AMERICA, Defendant - Appellee: Thomas Lee Gentry, Asst. U.S. Attorney, Office of the U.S. Attorney, Ginny M. Hamm, Office of District Counsel, U.S. Department of Veterans Affairs, Lexington, KY.

**Judges:** BEFORE: WELLFORD, SUHRHEINRICH, and MOORE, Circuit Judges.

**Opinion by:** HARRY W. WELLFORD

## Opinion

**HARRY W. WELLFORD**, Circuit Judge. Plaintiff Carl Vance,[1] by and through Debra Vance Hammons, administratrix of Carl Vance's estate, brought this suit alleging that defendant Veterans Administration committed medical malpractice in its treatment of him. The district court granted summary judgment for the defendant due to the plaintiff expert's **[*2]** failure to establish causation. Furthermore, the district court refused to consider the aforementioned expert's supplementary affidavit which arguably did establish causation due to the fact that the deadline for such a supplement had passed five months earlier. Plaintiff now appeals these rulings. For the following reasons, we **AFFIRM** the district court.

I.

The family of Carl L. Vance has sued the Veterans Administration ("VA") for medical malpractice in connection with its treatment of Vance who was suffering from the advanced stages of Alzheimer's disease when admitted to a VA medical facility in 1990. The district court granted the defendant's motion for summary judgment after initial proceedings in that court. On appeal, this court reversed and remanded to the district court in order that plaintiff might pursue additional discovery.

---

[1] Carl Vance died in 1995.

On remand, the district court set further discovery procedures, and the parties pursued a number of depositions, including a number of **[*3]** family members, who expressed their concerns about Vance's treatment. The evidence demonstrated that the following findings, as articulated by the district court, were essentially not subject to material dispute:

> On November 27, 1992, Vance was found lying on the floor, perhaps from a fall. The staff checked for bruising, abrasions, and other symptoms associated with a fall. They found none. After making sure that Vance had a full range of motion and that he was able to walk, the staff assisted him back to bed. The Vance family was not informed of the incident. As asserted by plaintiff's family, and contested by defendant, Vance never again walked independently.
>
> . . .
>
> On December 31, 1992, Vance was found lying on the floor on his right side. No one observed how he happened to be on the floor. The staff performed a "body audit" and did not observe any reddened areas or bruises. Additionally, the staff performed range of motion tests on all extremities which Vance performed without difficulty. Finally, the staff helped Vance to his feet and he walked for fifty (50) feet. From that point on, and ultimately until his discharge from VAMC, Vance was able to ambulate with assistance. **[*4]**
>
> . . .
>
> Vance stayed at VAMC until January 21, 1993, when he began exhibiting a low grade fever and jerky movements. On January 22, 1993, after listening to Vance's status report furnished by the night cover doctor, Dr. Aleem, the attending physician at VAMC, attempted to evaluate Vance and transfer him back to acute medicine. She checked his lungs and reported them clear and opined that Vance had a bladder/kidney infection. The Vance family refused all suggested treatment, including a transfer to the VA facility on Cooper Drive, and took Vance out of the facility against medical advice ("AMA").
>
> On the same day that Vance was discharged from VAMC AMA, Vance was transported by ambulance and admitted to Scott General Hospital in Georgetown, Kentucky ("Scott General"). In the emergency room at Scott General, Vance was diagnosed with pneumonia, later confirmed to be Legionella pneumonia. Dr. Gus Bynum treated Vance for pneumonia until February 10, 1993. On that date Vance was transferred to Central Baptist Hospital in Lexington, Kentucky ("Central Baptist"), where he was treated by Dr. Clay Gerhardstein for the unresolved pneumonia.

Plaintiff first faults the Veterans Administration **[*5]** for failing promptly to recognize Legionnaire's disease, a type of pneumonia. The other principal basis of plaintiff's claim was that he apparently fell while at the VA facility in November, 1992, fracturing his hip and needing assistance to walk thereafter. Plaintiff claims malpractice on defendant's part for failure to discover whether he fractured his hip at that time and failure to afford him proper physical therapy that he might become ambulatory again.

The district court once again granted summary judgment to defendant after the aforementioned remand, noting, among other things, the failure of Vance to adhere to his discovery schedule:

> This Court . . . entered a Scheduling Order which provides that: the parties shall disclose their respective expert witnesses as well as a written copy of each experts' report no later than June 16, 1997; rebuttal experts shall be disclosed no later than thirty (30) days thereafter; that discovery shall be completed no later than September 16, 1997; dispositive motions shall be filed no later than October 16, 1997;. . . .
>
> . . .
>
> On June 23, 1997, seven days after the deadline set by the scheduling court, plaintiff filed the four-page **[*6]** affidavit of Dr. Perry Hookman, plaintiff's expert. Plaintiff failed to file her expert's curriculum vitae and a formal Rule 26(a)(2) report. By attaching a more detailed affidavit signed and sworn to by Dr. Hookman on November 21, 1997, to its response memorandum to defendant's motion for summary judgment, which plaintiff filed on November 21, 1997, plaintiff attempts to supplement Dr. Hookman's original affidavit with an affidavit which is more detailed and more favorable to plaintiff.

(Footnotes omitted.) The district court also overruled plaintiffs' motions to vacate and for a new trial, treating them as a motion to reconsider. The district court did not consider Dr. Perry Hookman's November 1997 supplemental affidavit because it was untimely. Defendant pointed out that its medical experts had been identified as early as 1994 to plaintiffs and that plaintiffs knew about other doctors who might testify with knowledge of the case long before 1997. Furthermore, the complete Vance medical record was furnished a

year before Dr. Hookman's supplemental affidavit.

The district court ultimately concluded that plaintiff's evidence failed to state a valid medical malpractice claim, [*7] stating that:

> Dr. Hookman opines that Mr. Vance contracted pneumonia at VAMC and that it went undiagnosed for a period of time. He states that the defendant's failure to diagnose Vance's pneumonia constitutes treatment which falls below the applicable standard of care required and expected of a reasonably competent practitioner. Even accepting Dr. Hookman's opinion as true, which is suspect in light of the other expert testimony contained in the record, Dr. Hookman fails to opine as to the injury caused by defendant's negligence. Thus plaintiff does not satisfy the second prong of the two-part test a plaintiff must meet to sustain a medical malpractice case in Kentucky.
>
> . . .
>
> Dr. Hookman's opinion regarding defendant's alleged negligence regarding Mr. Vance's broken hip does not support the first prong of the applicable test, that the challenged treatment deviated below the applicable standard of care required and expected of a reasonably competent practitioner. *Id.* Dr. Hookman states that "there is strong circumstantial basis to believe that Mr. Vance sustained a broken hip while confined at the VA Hospital in the months of November and December, 1992." *Dr. Hookman's Affidavit*, [*8] p. 3. On that assumption, Dr. Hookman concludes that defendant's failure to x-ray constitutes a deviation below the applicable standard of care. However, because Dr. Hookman fails to state that by a reasonable medical certainty he can find that Mr. Vance suffered a fractured hip while at VAMC, as opposed to fracturing it at Spring haven nursing home or while at war many years ago, his premise fails and thus his conclusion as to the first prong of the test must fail also.

(Footnotes omitted). Plaintiff argues that, contrary to the district court's conclusions, there are contested, unresolved material facts, and that Dr. Hookman's supplemental affidavit must be taken into account.

II.

A.

"**HN1**[↑]] A district court's decision to invoke *Rule 37* sanctions is reviewed by this court for an abuse of discretion." *Beil v. Lakewood Engineering and Manufacturing Co., 15 F.3d 546, 551 (6th Cir. 1994)*. "**HN2**[↑]] An abuse of discretion occurs when (1) the district court's decision is based on an erroneous conclusion of law, (2) the district court's findings are clearly erroneous, or (3) the district court's decision is clearly unreasonable, arbitrary or fanciful." *Id.*

It is well-established [*9] that **HN3**[↑]] *Fed. R. Civ. P. 37(c)(1)*, [2] [*12] enacted in 1993, mandates that a trial court punish a party for discovery violations in connection with Rule 26 [3] unless the violation was

---

[2] The text of this rule states:

> (c) Failure to Disclose; False or Misleading Disclosure; Refusal to Admit.
>
> (1) A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1) shall not, unless such failure is harmless, be permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed. In addition to or in lieu of this sanction, the court, on motion and after affording an opportunity to be heard, may impose other appropriate sanctions. In addition to requiring payment of reasonable expenses, including attorney's fees, caused by the failure, these sanctions may include any of the actions authorized under subparagraphs (A), (B), and (C) of subdivision (b)(2) of this rule and may include informing the jury of the failure to make the disclosure.
>
> (2) If a party fails to admit the genuineness of any document or the truth of any matter as requested under Rule 36, and if the party requesting the admissions thereafter proves the genuineness of the document or the truth of the matter, the requesting party may apply to the court for an order requiring the other party to pay the reasonable expenses incurred in making that proof, including reasonable attorney's fees. The court shall make the order unless it finds that (A) the request was held objectionable pursuant to Rule 36(a), or (B) the admission sought was of no substantial importance, or (C) the party failing to admit had reasonable ground to believe that the party might prevail on the matter, or (D) there was other good reason for the failure to admit.

[3] The relevant portion of Rule 26 is as follows:

> (2) Disclosure of Expert Testimony.
>
> (A) In addition to the disclosures required by paragraph (1), a party shall disclose to other parties the identity of any person who may be used at trial to present evidence under *Rules 702*, *703*, or *705 of the Federal Rules of Evidence.*

harmless or is substantially justified. *See Salgado v. General Motors Corporation, 150 F.3d 735, 742 n.6 (7th Cir. 1998)* (holding that Rule 37(c)(1) puts teeth into Rule 26 and that "the district court acted well within its discretion when it decided to impose the sanction of precluding the witnesses from testifying" since "the sanction of exclusion is automatic and mandatory unless the sanctioned party can show that its violation of Rule 26(a) was either justified or harmless"); *Finley v. Marathon Oil Co., 75 F.3d 1225, 1230 (7th Cir. 1996)* (similar holding); *Ames v. Van Dyne, 1996 U.S. App. LEXIS 29700*, No. 95-3376, 1996 WL 662899 at **4 (6th Cir. Nov. 13, 1996) ("'Rule 37 is written in mandatory terms and is designed to provide a strong inducement for disclosure of Rule 26(a) material.'") (quoting *Newman v. GHS Osteopathic, Inc., 60 F.3d 153, 156 (3d Cir. 1995))* (citation and internal quotation marks omitted); *Provident Life & Accident Insurance Company v. Adie, 176 F.R.D. 246 (E.D. Mich. 1997)* (applying Rule 37(c)(1) [*10] to bar previously non-disclosed evidence pertaining to an issue). Perhaps the best description of this rule and its policy justifications comes from the 1st Circuit case of *Klonoski v. Mahlab, 156 F.3d 255, 269 (1st Cir. 1998)*, where the court states:

---

(B) Except as otherwise stipulated or directed by the court, this disclosure shall, with respect to a witness who is retained or specially employed to provide expert testimony in the case or whose duties as an employee of the party regularly involve giving expert testimony, be accompanied by a written report prepared and signed by the witness. The report shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions; the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the study and testimony; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years.

(C) These disclosures shall be made at the times and in the sequence directed by the court. In the absence of other directions from the court or stipulation by the parties, the disclosures shall be made at least 90 days before the trial date or the date the case is to be ready for trial or, if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party under paragraph (2)(B), within 30 days after the disclosure made by the other party. The parties shall supplement these disclosures when required under subdivision (e)(1).

Prior to adoption of Rule 37(c)(1), no rule specifically provided sanctions for the failure to supplement discovery. Courts were free to apply their discretion in sanctioning Rule 26(e) violations. The new rule is mandatory: a party that fails to make the required disclosures "shall not, unless such failure is harmless, be permitted to use [undisclosed] evidence at a trial." [Rule 37(c)(1)]. To be sure, the rule somewhat tempers this mandate by permitting courts to excuse failures to disclose to some degree (i.e., to impose other sanctions "in lieu of this sanction"). Fed.R.Civ.P. 37(c)(1). But the new rule clearly contemplates stricter adherence to discovery requirements, and harsher sanctions for breaches of this rule, and the required sanction in the ordinary case is mandatory preclusion.

Even before the 1993 amendments, in *National Hockey League v. Metropolitan Hockey Club, Inc., 427 U.S. 639, 96 S. Ct. 2778, 49 L.* [*11] *Ed. 2d 747 (1976)* (per curiam), the Supreme Court stressed the policy reasons for enforcing the discovery rules. The most severe sanctions provided by the rules, the Court explained, "must be available to the district court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent." *Id. at 643, 96 S. Ct. 2778*. While a warning alone might have made the plaintiffs in that case comply with all future discovery orders, "other parties to other lawsuits would feel freer than we think Rule 37 contemplates they should feel to flout other discovery orders of other district courts." *Id.* Thus, enforcement of discovery rules and orders is necessary, the Court concluded, to prevent abuse by future litigants.

*Id.* As one can see from these cases, it is not uncommon for this rule to be invoked by a trial court as a justification for excluding testimony.

[*13] There is no question that the plaintiff violated Rule 26. However, the plaintiff argues that the violation was both substantially justified and harmless. First, we look at the substantial justification argument. Plaintiff argues that Dr. Hookman could not have been any more specific in his first affidavit because he needed to look at the deposition transcripts of other witnesses that were held after the filing. The plaintiff states: "It was literally and absolutely impossible for Dr. Hookman to offer opinions on information which did not exist on June 19, 1997. Dr. Hookman's second affidavit was supplied to

the Court and opposing counsel just thirty-five days after the last of eight medical depositions was filed." Furthermore, the plaintiff argues that "the Plaintiff was required by FRCP 26 to supplement her disclosures and complied with that duty in her responsive pleading to the Defendant's summary judgment motion filed October 16, 1997." Finally, the plaintiff argues that the delay in receiving Dr. Aleem's first deposition, which was due to Dr. Aleem's heavily accented English and the reporter's difficulty in understanding it and which ultimately took nearly four months to transcribe, **[*14]** justified a reform of the scheduling order, which the trial court refused to give.

Though the plight of the plaintiff may be a sympathetic one, it seems that plaintiff's complaint is with the district court's refusal to reform the scheduling order. Once the district court refused to do so, the plaintiff is bound by the date and must do the best it can to get things done before then. *See* Salgado, 150 F.3d at 742 n.6 ("It is the responsibility of the attorneys to ensure that the expert's report contains complete opinions that are properly and thoroughly set forth and supported.") (citing Reed v. Binder, 165 F.R.D. 424 (D. N.J. 1996)). While waiting for the transcript of Dr. Aleem, the plaintiff could have been conducting other depositions. Furthermore, the plaintiff's argument that it was required to supplement their expert's affidavit, while true, rings hollow when one realizes that the language in Rule 26 requires any supplements to be filed before the due date. [4] Finally, the fact that the supplement came five months after the initial deadline and that it came in response to a motion for summary judgment ultimately tips the balance in defendant's favor on this issue. The **[*15]** plaintiff's argument would be much more sympathetic if the supplement had been submitted only a few weeks after the initial deadline and had been submitted on its own, rather than in response to a motion from the defendant-appellee. The plaintiff simply dilly-dallied too long in conducting the depositions.

**[*16]** Plaintiff further argues that the defendant's motion to strike this testimony made no claim of harm or prejudice, and that "Dr. Hookman's November 21 affidavit pulls together information which was already well known to the VA [defendant] prior to June, 1997." This claim fails for two reasons. First, there is the instructive commentary by the Advisory Committee to the 1993 Amendments to Rule 37, which included the passage of Rule 37(c)(1). There, the Advisory Committee stated:

> Limiting the automatic sanction to violations 'without substantial justification,' coupled with the exception for violations that are 'harmless,' is needed to avoid unduly harsh penalties in a variety of situations: e.g. the inadvertent omission from a Rule 26(a)(1)(A) disclosure of the name of a potential witness known to all parties; the failure to list as a trial witness a person so listed by another party; or the lack of knowledge of a pro se litigant of the requirement for disclosure had been called to the litigant's attention by either the court or another party.

Advisory Committee Notes to 1993 Amendments (including Rule 37(c)(1)). This commentary strongly suggests that "harmless" involves **[*17]** an honest mistake on the part of a party **coupled with** sufficient knowledge on the part of the other party. Here, there was neither. The defendant did not know what other opinions the expert would state until the supplement was filed. Plaintiff deliberately disobeyed the deadline, regardless of whether there was a good reason for it. In Rowe v. Case Equipment Corp., 1997 U.S. App. LEXIS 227, No. 95-6315, 1997 WL 2647 (6th Cir. Jan. 2, 1997) (per curiam), the original trial date was set for September 11, 1995, and expert witnesses were to be

---

[4] The relevant portion of Rule 26 reads:

> (e) Supplementation of Disclosures and Responses. A party who has made a disclosure under subdivision (a) or responded to a request for discovery with a disclosure or response is under a duty to supplement or correct the disclosure or response to include information thereafter acquired if ordered by the court or in the following circumstances:
>
> (1) A party is under a duty to supplement at appropriate intervals its disclosures under subdivision (a) if the party learns that in some material respect the information disclosed is incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing. With respect to testimony of an expert from whom a report is required under subdivision (a)(2)(B) the duty extends both to information contained in the report and to information provided through a deposition of the expert, and any additions or other changes to this information shall be disclosed by the time the party's disclosures under Rule 26(a)(3) are due.
>
> (2) A party is under a duty seasonably to amend a prior response to an interrogatory, request for production, or request for admission if the party learns that the response is in some material respect incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing.

identified by May 1, 1995. The plaintiff there disclosed an expert on April 12, 1995, and then supplemented this disclosure on July 6, 1995, sixty-five days after the original deadline. In *Rowe*, we stated:

> [The plaintiff] claims that [the expert witness in question] could have been deposed in the two weeks prior to trial after the report had been filed with the court. However, the plaintiff's failure to disclose his expert's report until the eve of trial, leaving [the defendant] little opportunity to depose the expert and secure a rebuttal witness, was more than harmless to [the defendant].

*Rowe*, 1997 WL 2647 at *2. In this case, **[*18]** like that one, the opposing party would have virtually no opportunity to depose the expert since here, the discovery cut-off date was September 16, 1997. Thus, the plaintiff's argument ultimately must fail due as in *Rowe*.

Finally, plaintiff's argument that the "*Regional Refuse*"[5] test applies here is incorrect. That test was established in 1988 before *Rule 37(c)(1)* was passed by Congress. After *Rule 37(c)(1)*'s passage in 1993, the test is very simple: the sanction is mandatory unless there is a reasonable explanation of why Rule 26 was not complied with or the mistake was harmless. Likewise, the plaintiff's reliance on *Freeland v. Amigo, 103 F.3d 1271 (6th Cir. 1997)*, and *Harmon v. CSX Transportation, 110 F.3d 364 (6th Cir. 1997)*, is misplaced since in both of those cases, the sanction in question arose under either *Rule 37(b)* or Rule 41(b), where an altogether different test, the *Regional Refuse* test, does apply. The district court did not abuse its discretion in not considering the supplement of plaintiff's expert. Medical files and records were available to plaintiff, who failed to present compelling evidence about the failure to adhere to the rules and the **[*19]** district court's announced schedule.

## B.

Plaintiff maintains that the district court erred when it granted defendant's motion for summary judgment. **HN4**[↑] We review the district court's grant of summary judgment *de novo*, and its findings of fact for clear error.

See *Grand Traverse Band of Ottawa and Chippewa Indians v. Director, Mich. Dep't of Natural Resources, 141 F.3d 635, 638 (6th Cir. 1998)* (citing *Russo v. City of Cincinnati, 953 F.2d 1036, 1041-42 (6th Cir. 1992))*. We have stated in *United States v. Russell, 156 F.3d 687, 690 (6th Cir. 1998)*, that "**HN5**[↑]] a finding is clearly erroneous when 'although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been **[*20]** committed.'" *Id.* (quoting *United States v. United States Gypsum Co., 333 U.S. 364, 365, 92 L. Ed. 746, 68 S. Ct. 525 (1948))*. As the district court stated, "under the law in Kentucky, **HN6**[↑] in order to prevail in a medical malpractice suit, a plaintiff must prove the following two elements: (1) that the challenged treatment was a deviation below the applicable standard of care required and expected of a reasonably competent practitioner; and (2) that the alleged negligent act proximately caused the claimed injury."[6] **[*21]** JA 33 (citing *Reams v. Stutler, 642 S.W.2d 586, 588 (Ky. 1982))*. The district court also noted that "in this case, as in most medical malpractice cases, the connection between the negligent act and the injury must be shown by expert medical testimony and said testimony must be that causation is probable not merely possible."[7] *Id.* (citing *Jarboe v. Harting, 397 S.W.2d 775, 777 (Ky.App. 1965))*.

With regard to plaintiff's fracture of the hip claim, the district court held that Dr. Hookman's opinion "[did] not support the first prong of the [aforementioned] test, that the challenged treatment deviated below the applicable standard of care required and expected of a reasonably competent practitioner." We agree, since Dr. Hookman did not establish a reasonable medical certainty that the plaintiff fractured his hip while at the VAMC. Even if he had been able to establish that the fracture of the hip occurred at the VAMC, there is insufficient evidence that the VAMC staff shirked its duty in caring for the plaintiff.

With regard to the plaintiff's pneumonia claim, the district court held, on December 23, 1997, that "plaintiff does not satisfy the second prong of the two-part test a

---

[5] The test referred to here is from the case of *Regional Refuse Systems, Inc. v. Inland Reclamation Co., 842 F.2d 150 (6th Cir. 1988)*, which lists four factors which are determinative in whether the imposition of sanctions under *Rule 37* is justified.

[6] This court must apply the substantive law of Kentucky, the state in which the alleged negligent act occurred, to plaintiff's medical malpractice action brought under the Federal Tort Claims Act, *28 U.S.C. §§ 1346(b)*, *2674*, against the United States of America.

[7] The only exception to this is if causation is so apparent that laymen with a general knowledge would have no difficulty in recognizing it. *Id.* This does not apply here.

plaintiff must meet to sustain a medical malpractice case"--that the negligent VA act caused the injury complained about. There is **[\*22]** insufficient proof that defendant's actions caused the pneumonia contracted by Vance, or that its failure for a day or two at most to diagnose pneumonia (taking plaintiff's claim as true) caused compensable injury to Vance, who recovered in due course. (Dr. Bynum: "he had a long-term disability that was there prior to the pneumonia and there after the pneumonia." JA 898). Vance was not treated for Legionella with specific drugs for more than ten days *after* the family removed him from the VA facility.

What was lacking in the record and testimony obtained by plaintiff was evidence that directly demonstrated the effect of an immediate failure by defendant and its agents at the VA nursing home to diagnose some form of pneumonia and a day or two's delay, at most, in treating the symptoms demonstrated by Vance. Plaintiff does not support with proof any claim that if Vance incurred a form of pneumonia at the VA facility, as claimed, this was evidence of negligence or lack of care for Vance by the VA. To the contrary, the evidence was to the effect that it was not unusual for elderly patients, such as Vance, in a nursing home or hospital to suffer pneumonia symptoms, especially those **[\*23]** afflicted with Alzheimer's disease who could not adequately communicate their symptoms and ailments to medical personnel. Indeed, Vance was treated in 1993 at private hospitals for pneumonia in February, and his symptoms gradually subsided. No doctor's opinion in evidence demonstrates what more immediate and other treatment with reasonable medical certainty would have made a difference in the rate of recovery or restoration of Vance to his 1992 condition prior to his bout of pneumonia.

After careful examination of the record, excluding the second Hookman affidavit, we find no error in the district court's conclusion that there were no material issues still in dispute, and that defendant was entitled to summary judgment on the malpractice claim. Plaintiff may have demonstrated some less than satisfactory care in the failure to take x-rays or in a very prompt diagnosis of pneumonia, but there is no material factual dispute but that plaintiff failed to demonstrate medical malpractice causing demonstrated proximate damage to this elderly Alzheimer patient. The district court did not err in granting summary judgment.

Accordingly, we **AFFIRM** the decision of the district court.

**End of Document**